UNITED STATES OF AMERICA
vs.
Rafael Vincente
DE LA ROSA SANCHEZ

Cri. No. 80-276-MA

United States District Court
D. Massachusetts

January 16, 1981

Scott for the plaintiff.
David A. Cooper for the defendant.

## MEMORANDUM AND ORDER

MAZZONE, D.J. This is a motion under the Jury Selection and Service Act, 28 U.S.C. § 1867, and the Constitution by the defendant, Rafael Vincente de la Rosa Sanchez, to dismiss the indictment on the grounds that 'Hispanics and blacks have been systematically excluded from grand juries and from service as forepersons of grand juries in the District of Massachusetts, Eastern Division.[1]

The defendant was indicted with co-defendant Alice L. Boyd on August 19, 1980 for violations of federal bribery and conspiracy statutes, 18 U.S.C. § § 201(f) and 371. On September 24, 1980 a superseding indictment was filed against defendants Sanchez, Boyd and Manuel Bello under the latter statutes and 18 U.S.C. § 1001. On November 7, 1980 this Court granted the defendant's motion to inspect grand jury records. The instant motion was filed on December 18, 1980. A sworn statement of facts to support the motion was filed on January 5, 1981. We have received memoranda of law, affidavits, and exhibits from both parties. In addition, we have received a letter from defense counsel, David A. Cooper, dated January 7, 1981, stating that, if an evidentiary hearing were scheduled, the only additional evidence that he would present would concern the narrow issue of whether Portuguese persons are counted as Hispanics in determining the composition of a grand jury.

We rule on the defendant's motion without an evidentiary hearing because we do not consider the question of classification of Portuguese grand jurors to be dispositive. Moreover, since we find that the defendant has not alleged facts that, if true, would constitute a substantial violation of the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., we do not believe an evidentiary hearing would be warranted in any event. 28 U.S.C. § 1867(d).

The government adduces three arguments in opposition to the defendant's motion to dismiss the indictment: (1) the motion is untimely under 28 U.S.C. § 1867(a); (2) the grand jury selection process provides adequate representation of Hispanics and blacks; and (3) the defendant has not shown that the process for selecting grand jury forepersons results in underrepresentation of Hispanics and blacks. We treat these issues seriatim.

### Timeliness

18 U.S.C. § 1867(a) requires that motions challenging jury selection procedures under the Jury Selection and Service Act be made "within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor." The First Circuit has recently held that failure to comply with the statutory timetable bars challenge under the Act. United States v. Foxworth, 599 F.2d 1, 3 n. 3 (1st Cir. 1979). However, although Mr. Cooper entered his appearance in this case on August 26, 1980, and did not file the instant motion until December 18, 1980, we are

---

[1] Mr. Sanchez's co-defendant Alice L. Boyd has filed a motion to dismiss the indictment based on different violations of the Jury Selection and Service Act. Co-defendant Manuel Bello has not filed a motion to dismiss.

reluctant to find that he discovered or should have discovered the grounds for this motion more than seven days before December 18. We know of no prior motions filed by Mr. Cooper in other cases concerning the jury selection procedures in this District. The date from which the seven-day period began to run in this case is therefore difficult to pinpoint, unlike the case in Foxworth. We also note that, even if we found the motion untimely under § 1867(a), the defendant's constitutional challenge would be unaffected.

### Selection of the Grand Jury

Under the Jury Selection and Service Act, 28 U.S.C. § 1861, a criminal defendant has the right to a grand jury "selected at random from a fair cross section of the community." An indictment will be dismissed on a showing of a "substantial" deviation from this requirement. 28 U.S.C. § 1867. In order to make out a prima facie case of a substantial violation of the Act, a defendant must show:

> that a "distinctive" group, that is, a "cognizable" group, was excluded from the jury selection process; that such group was "systematically excluded;" and that because of such exclusion the jury pool failed to be "reasonably representative" of the community.

United States v. Foxworth, 599 F.2d 1, 3 (1st Cir. 1979), citing United States v. Test, 550 F.2d 577, 585 (10th Cir. 1976).

The Constitution also guarantees a criminal defendant the right to a grand jury selected from a fair cross section of the community. See, Taylor v. Louisiana, 419 U.S. 522, 527 (1975) (Sixth Amendment challenge to state petit jury). In Taylor, the Court described the guarantees of the Sixth Amendment and of the Jury Selection and Service Act as having "a similar thrust," 419 U.S. at 528. The same three-pronged showing as described above is necessary to establish a prima facie case of violation of the Sixth Amendment:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 365 (1979). Although it is more likely that the defendant Sanchez's constitutional right to a representative grand jury in a federal prosecution is rooted in the Fifth Amendment than in the Sixth Amendment, the two rights have been described as "similar." Castaneda v. Partida, 430 U.S. 482, 510 (1977) (Powell, J., dissenting). The defendant, Sanchez, therefore, must satisfy each of the above elements.[2]

We can conclude without extensive discussion that both Hispanics and blacks form cognizable, distinctive groups in the Eastern Division of the District of Massachusetts. See, Castaneda v. Partida, supra, 430 U.S. at 495; Rose v. Mitchell, 443 U.S. 545, 565 (1979).

Much data has been submitted by the defendant and by the government concerning the proportion of Hispanics and blacks among the voting-age population in the Eastern Division of the District of Massachusetts and the proportion of Hispanics and blacks in the various stages of the grand jury selection process. The parties do not substantially dispute the data, except for

---

[2]The defendant does not rely on his constitutional guarantee of equal protection; however, the three elements of a prima facie case of discrimination in jury selection under the Equal Protection Clause are virtually identical to those outlined above for violation of the fair-cross-section guarantee. See, Rose v. Mitchell, 443 U.S. 545, 565 (1979); Castaneda v. Partida, 430 U.S. 482, 494-95 (1977) (describing the third factor, systematic exclusion, as "a selection procedure that is susceptible of abuse or is not racially neutral"). As an Hispanic, the defendant Sanchez would not have standing to challenge the exclusion of other groups, such as blacks, on equal protection grounds. Cf. Taylor v. Louisiana, 419 U.S. 522, 526 (1975). Drawing analogies based on equal protection theory is further complicated by the requirement to prove discriminatory purpose in equal protection cases. See, Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977); Washington v. Davis, 427 U.S. 229 (1976). "Systematic exclusion" under the various fair-cross-section guarantees, on the other hand, apparently does not depend on a showing of discriminatory purpose. See United States v. Test, 550 F.2d 577, 585 n. 6 (10th Cir. 1976).

the defendant's objection, noted above, to the classification of Portuguese as Hispanics. Accepting for purposes of discussion the government's figures concerning Hispanics,[3] we observe that the proportion of grand jurors in 1978-1980 who were Hispanic (1.45%) and the proportion of those summonsed for grand juries in 1978-1980 who were Hispanic (4.25%) are both greater than the proportion of Hispanics in the relevant community (1.01% of voting age population, from 1980 census). Additionally, the proportions of persons on the "master" jury wheel and the "qualified" jury wheel in 1978 and 1980 who were Hispanic were also greater than the census figures. The undisputed figures concerning blacks show that blacks comprise 2.70% of the relevant community (from 1980 census) and formed 2.87% of those summonsed for grand juries in 1978-1980 and 2.03% of actual grand jurors in 1978-1980. The disparity appears, therefore, to be only 0.67%, or about two-thirds of one percent, between the proportion of blacks in the population and that of blacks serving on grand juries. Even if this disparity were statistically "significant," which the government represents it is not, it must be considered inconsequential.[4]

Assuming, arguendo, that a statistical underrepresentation of some consequence did exist for Hispanics and blacks on grand juries, the defendant has still failed to allege any facts to support the third element of his prima facie case, systematic exclusion. Although demonstrating systematic exclusion does not require proof of discriminatory purpose, see note 1 supra, the defendant must point to some step in the jury selection process that operates in a regular, or systematic, way to exclude Hispanics or blacks. Unlike the procedures in Taylor and Duren, whereby only women were permitted automatic exemptions from petit jury service, the procedures in this District do not treat Hispanics and blacks differently from other potential jurors. A computer randomly selects persons for the master jury wheel from voter lists. Each person on the master wheel is sent a questionnaire. A qualified jury wheel is compiled from the responses to the questionnaire.

The computer then randomly selects jury panels from the qualified wheel. It is hard to see how this system is even capable of abuse, except by intervention in the computer program, and no allegation of such mischief has been made.

## Selection of Grand Jury Forepersons

The Fifth Amendment's grand jury clause and the Jury Selection and Service Act require that grand jury forepersons be selected "from a fair cross section of the community" to the same extent as jurors. The same three-pronged showing must be made by the defendant to prove a prima facie case of violation of this requirement. Cf. Rose v. Mitchell, 443 U.S. 545, 565 (1979) (equal protection challenge to state grand jury forepersons).

Again, we assume that Hispanics and blacks are distinctive groups in this District.

The defendant has provided us with data showing that no Hispanic or black forepersons were chosen for the past 18 grand juries. Given the proportions of these groups in the voting age population, the government has calculated that an Hispanic foreperson would be expected in only one out of 100 grand juries and a black foreperson in only one out of 40 grand juries. Although we recognize the pitfalls of attempting a statistical analysis on the basis of only 18 forepersons, see; Rose v. Mitchell, 443 U.S. at 591 (White, J., dissenting), there is simply no indication of under-

---

[3]The government's inclusion of Portuguese in its count of Hispanics is consistent with the definition of Hispanic urged by the defendant, taken from Social Security Administration form No. SS-5, "Hispanic [i]ncludes persons of Chicano, Cuban, Mexican or Mexican-American, Puerto Rican, South or Central American, or other Spanish Ancestry or descent" (emphasis added). Webster's Third New International Dictionary of the English Language, Unabridged 1072 (G.&C. Merriam Co. 1971) defines "hispanic" as "relating to or derived from the people, speech, or culture of Spain or of Spain or Portugal." The word is derived from the Latin word "Hispania," meaning Spain or the Iberian Peninsula.

[4]We note that the defendant submitted no statistical analysis of the data. Normally such data should be modeled by a binomial distribution, so that the likelihood of drawing the grand jury, in its actual composition, from the population by chance could be calculated. See, Castaneda v. Partida, 430 U.S. at 496 n. 17.

representation on these facts.

The procedure for selecting grand jury forepersons is prescribed in Fed.R.Crim.P. 6(c). The district judge appoints the foreperson and deputy foreperson from among the 23 randomly-selected grand jurors. Although this procedure is not random or "blind," and thereby may be susceptible of misuse, its inclusion in the federal rules adopted by the Supreme Court implies that, at least facially, it is valid. If the record contained any indication, statistical or otherwise, that district judges were actively excluding Hispanics or blacks from service as forepersons of grand juries, then this factor would be met. On this record, however, we cannot see any basis for overturning the procedure for selection of forepersons in this District.

The government has further argued that, where the grand jury is randomly selected from a representative cross section of the community and the foreperson is selected from among the grand jurors, no challenge to the method of selecting forepersons is possible. The Supreme Court's reiteration of the three factors constituting a prima facie case and its painstaking review of the statistical evidence of exclusion of black foremen in **Rose v. Mitchell,** 443 U.S. at 566-574, indicates that it has not adopted such a categorical rule.

The defendant has failed to establish a prima facie case of violation of his right, under the Jury Selection and Service Act and under the Constitution, to a grand jury and a grand jury foreperson selected from a fair cross section of the community. Accordingly, his motion to dismiss the indictment is denied.

So ordered.
Mazzone
U.S. Dist. Judge